**SO ORDERED.**

**SIGNED March 29, 2018.**



———————————————————
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF LOUISIANA


IN RE:

JOHN GODINEZ,                            CASE NO. 15-20555

     Debtor                              Chapter 7
-------------------------------------------------------------
MICHAEL D. QUINN AND WORKPLACE
CORNERSTONE GROUP, LLC,
     Plaintiffs

VERSUS                                   ADVERSARY NO. 15-2012

JOHN GODINEZ,
     Defendant
-------------------------------------------------------------
                    REASONS FOR DECISION
-------------------------------------------------------------
```

The plaintiffs in this adversary proceeding, Michael Quinn and Workplace Cornerstone Group, LLC ("WCG") contend that the defendant, John Godinez, fraudulently converted $100,142 of WCG's funds to his own personal use during a period when he and Quinn were business partners. Quinn and WCG seek a judgment declaring

the $100,142 non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). The court took the case under advisement following a bench trial. After reviewing the record, the parties' arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J) and Stern v. Marshall, 564 U.S. 462, 131 S.Ct. 2594 (2011). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

Quinn and Godinez organized WCG as a Connecticut limited liability company ("LLC") in 2004 for the purpose of providing consulting services to clients in the nuclear power industry. WCG was governed by an LLC operating agreement (the "Operating Agreement"). (Trial Exhibit ("Tr. Exh.") No. 2). Under the Operating Agreement, Quinn and Godinez were the sole members and managers of WCG. (Id. at Ex. A). Ownership of WCG was divided 51% to Godinez and 49% to Quinn, but the business partners shared equal responsibility in managing WCG. (Id. at ¶ 2.1). In this regard,

-2-

Quinn and Godinez adopted procedures for managing the expenses incurred in connection with the business, including expenses incurred serving a client ("client expenses") and expenses incurred on behalf of WCG ("non-client expenses"). Client expenses included travel costs and other incidental expenses incurred in connection with a client, and were generally reimbursable under that client's contract. (Trial Transcript ("Tr. Trans.") at 47-49). Quinn testified that WCG maintained monthly expense records (including receipts) and hours logs as required for reimbursement by a client. (Id.) With respect to *non-client* expenses incurred on behalf of WCG, paragraph 2.8 of the Operating Agreement requires written authorization for expenditures that exceed $500. (Tr. Exh. 2 at ¶ 2.8). Quinn, however, testified that he and Godinez adopted a practice of discussing and approving such expenditures verbally as opposed to requiring written authorization. (Tr. Trans. At 50-52). Like client expenses, however, these expenses had to be documented for tax purposes. (Id.)

Beginning in or around 2008, Godinez requested personal loans from Quinn and WCG to cover personal bills and non-company charges on his personal credit cards. (Id. At 56-57). Godinez had encountered financial problems during this period. (Id.) According to Quinn, Godinez engaged in only 20-21 weeks of paid consulting work from 2004 to 2010, and was fired by a Canadian

-3-

client in 2010. (Id. At 53-57). Godinez was also charged with a felony in 2010 that prevented him from working in the nuclear power industry. (Id.) Quinn testified that he and Godinez were friends as well as business partners, and that he readily agreed to lend Godinez money from his own personal accounts and the accounts of WCG. (Id. At 56-57). Quinn testified that Godinez had promised to repay these advances once his work stabilized. (Id.) Quinn and WCG ultimately loaned Godinez approximately $178,000.00 between 2008 and 2012. (Id.) Quinn testified that each advance he approved was specifically documented in an e-mail exchange with Godinez. (Id.)

The trial record reflects that during the period from 2009 through 2011, Quinn was on site with a client in Canada and Godinez was in control of the company's records and bank account. (Id. At 38; 127-28; 163-64). In 2012, Godinez was able to obtain a consulting job in Louisiana that grossed approximately $620,736.00 through 2015. (Id. At 75-76, 152; Tr. Exh. No. 1). Shortly after Godinez starting working in Louisiana, Quinn asked Godinez to repay the advances now that he was employed. Quinn testified that Godinez made some small payments, but that he could never get a commitment from Godinez on repaying the full amount of the advances. (Tr. Trans. At 75-77; Tr. Exh. Nos. 33-35). In or around August 2013, WCG hired a certified public accountant, Bruno

-4-

Passacantando, to review WCG's financial statements and its corporate tax filings in order to determine whether amended tax returns needed to be filed. (Tr. Trans. At 15). When Mr. Passacantando reviewed WCG's corporate records, he found that the company's bank statements for 2009 through 2011 were missing from the company's files. (Id. At 17,27). At some point after 2008, the address on WCG's bank account (and the address to which WCG's bank statements were sent) was changed to Godinez's personal residence. (Id. At 95). When Mr. Passacantando obtained duplicate bank statements from the bank, he discovered that Godinez had written company checks and authorized electronic transfers from WCG's bank account totaling approximately $100,142. (Id. At 96; 138; 172). These company funds were paid directly to Godinez or to his personal credit cards. Quinn testified that these checks and transfers were not approved or authorized in the parties' e-mail exchanges. (Id. At 60). Quinn and Mr. Passacantando testified that there was no documentation to support the checks or the expenditures on Godinez's personal credit cards that were paid off with WCG's funds. (Id. At 17-18, 20, 95-96, 105-107). They testified that there were no receipts or other documentation required for client expenses, nor was there evidence that the expenses were incurred on behalf of WCG. (Id.) Passacantando testified that Godinez did not respond to his attempts to obtain

-5-

information about WCG's bank accounts and these expenditures. (Id. at 15-16).

Quinn and WCG ultimately filed suit against Godinez in Connecticut state court on May 28, 2015. Godinez then filed for relief under Chapter 7 of the Bankruptcy Code in the Western District of Louisiana on July 2, 2015. Quinn and WCG then commenced the present adversary proceeding seeking to declare the $100,142 of unauthorized advances to be non-dischargeable under 11 U.S.C. §§ 523(a)(2), (4) and (6).

**DISCUSSION**

A creditor has the burden of proof in an action to determine the dischargeability of a debt. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each an every element of a statutory exception to discharge under 11 U.S.C. § 523 et seq. by a preponderance of the evidence.

-6-

### A. Non-Dischargeability Under 11 U.S.C. § 523(a)(4) --Fraud or Defalcation by a Fiduciary, Larceny, and Embezzlement

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). This exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 602 (5th Cir. 1998) (quoting In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987)).

#### 1. Did Godinez Act In A "Fiduciary Capacity" Within The Meaning of § 523(a)(4)?

In order to establish a non-dischargeability claim for fiduciary fraud or defalcation under section 523(a)(4), Quinn and WCG must establish that Godinez acted in a "fiduciary capacity." Not all fiduciary relationships under state law qualify as the fiduciary capacity required under section 523(a)(4). Fiduciary capacity under section 523(a)(4) is limited to cases involving technical or express trusts. In re Bennett, 989 F.2d 779, 784 (5th Cir. 1993) (citing In re Angelle, 610 F.2d 1335 (5th Cir.1980)); see also In re Tran, 151 F.3d 339, 342 (5th Cir. 1998); In re

Schwager, 121 F.3d 177, 186 (5th Cir. 1997). This "technical" or "express trust" requirement, however, "is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which *trust-type obligations* are imposed pursuant to statute or common law." In re Bennett, 989 F.2d at 784-85 (emphasis added). Indeed, courts have found such "trust-type obligations" in business relationships where there is a "differential in power or knowledge by an individual in a certain relationship of ascendancy over another individual or individuals." Martello v. Fowers (In re Fowers), 360 B.R. 888, 896 (Bankr. N.D. Ind. 2007) (citing In re Frain, 230 F.3d 1014 (7th Cir. 2000)).

Here, WCG is a Connecticut LLC and the duties of its members and managers are thus governed by Connecticut law. Connecticut General Statute § 34-255h(a) provides that the members of a member-managed LLC owe fiduciary duties of loyalty and care to the company. Standing alone, these fiduciary duties do not satisfy the "fiduciary capacity" requirement of section 523(a)(4) unless the record reflects additional "trust-type obligations." The court, however, finds trust-type obligations in the present case. While Quinn and Godinez initially shared management responsibility for WCG, Quinn's extended absence from 2009 until 2011 left Godinez effectively in control of WCG's bank account, bank statements, and its corporate records. The extent of Godinez's access to and

-8-

control over WCG's account and bank statements – and his actions in diverting WCG's bank statements to his personal residence – created a "differential in power or knowledge" sufficient to trigger the fiduciary capacity required under section 523(a)(4) for a fiduciary defalcation or fiduciary fraud claim.

**2. Defalcation by a Fiduciary**

A "defalcation" is a knowing breach of duty by a fiduciary. See Office of Thrift Supervision v. Felt (In re Felt), 255 F.3d 220, 226 (5th Cir. 2001). The state of mind required for a defalcation claim is "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Here, the court finds that Godinez breached his fiduciary duties to WCG by diverting corporate funds for his own personal use without authorization and without any attempt to provide an accounting for the funds diverted. See C.G.S. § 34-255h(b)(1)-(2). As far as the scienter requirement for defalcation, knowledge or intent may be inferred from the defendant's conduct and the surrounding circumstances. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95,99 (8th Cir. BAP 2000) ("Because direct proof of intent (i.e. the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred."); Cunningham v. Cunningham (In re Cunningham), 482 B.R.

-9-

444,448 (Bankr. N.D. Ala. 2012) (fraudulent intent may be inferred from surrounding circumstances and the conduct of the defendant); In re Andrews, 560 B.R. 429 (Bankr. S.D. Miss. 2016) (same). Here, Godinez was aware of the procedures the parties adopted for client expenses, non-client expenses, and personal advances. The $100,142 of undocumented checks and electronic transfers were not made in compliance with those procedures. Moreover, the record reflects that Godinez attempted to conceal his activities by diverting WCG's bank statements to his personal residence and then refusing to meet with or provide information to WCG's accountant about the missing documents and the diverted funds. This conduct and the surrounding circumstances support an inference that Godinez had "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Accordingly, plaintiffs have established the elements of a fiduciary defalcation claim under section 523(a)(4) by a preponderance of the evidence.

### 3. Fiduciary Fraud

"Fraud" for purposes of section 523(a)(4) requires a showing of intentional deceit. See, e.g., In re McDaniel, 181 B.R. 883, 887 (Bankr. S.D. Tex. 1994); In re Wells, 368 B.R. 506, 514 (Bankr. M.D. La. 2006). For a debt to be non-dischargeable under this section, the creditor must show that (1) the debtor made a representation; (2) the debtor knew the representation was false;

-10-

(3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. In re Acosta, 406 F.3d 367, 371 (5th Cir. 2005).

The record does not support proof of a fiduciary fraud by a preponderance of the evidence. Fraud requires proof of a misrepresentation or an actionable omission and reliance. Plaintiffs have not met their burden with respect to these two elements of a fiduciary duty claim. Accordingly, the court finds in favor of Godinez on plaintiffs' fiduciary fraud claim.

### 4. Embezzlement and Larceny

With respect to embezzlement and larceny, the manner in which the debtor comes into possession of the property determines which definition applies. Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." In re Miller, 156 F.3d at 602. Embezzlement requires proof of three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. Transamerica Commercial Finance Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir.1991) (quoting In re Hoffman, 70 B.R. 155, 162

-11-

(Bankr. W.D. Ark.1986)). Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." In re Hayden, 248 B.R. 519, 526 (N.D. Tex. 2000) (emphasis added).

Plaintiffs have established the elements of an embezzlement claim by a preponderance of the evidence. Godinez was entrusted with access and control over WCG's bank accounts. He used that access and control to convert WCG's funds for his personal use without authority, and WCG was damaged as a result. As far as the fraudulent intent element of embezzlement, as the court has previously found, Godinez's conduct and the surrounding circumstances support an inference of fraudulent intent.

With respect to larceny, the record does not support a larceny claim because Godinez had authority to access WCG's accounts and records for proper purposes. The subsequent wrongful conversion of WCG's property was without authority. While this later conversion supports an embezzlement claim, it does not support an independent larceny claim. Accordingly, the court finds in favor of Godinez on plaintiffs' larceny claim.

### B. Non-Dischargeability Under 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury

Section 523(a)(6) provides for the non-dischargeability of debts arising from a "willful and malicious injury by the debtor to

-12-

another entity or to the property of another entity." Courts have often disagreed over the level of culpability required under section 523(a)(6). In <u>Kawaauhau v. Geiger</u>, the Supreme Court put some of these disputes to rest. 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court held that injuries resulting from negligent or reckless conduct are insufficient to satisfy the requirements of section 523(a)(6). A finding that the debtor engaged in intentional acts that resulted in injury is similarly insufficient. <u>Id</u>. <u>Geiger</u> did not, however, resolve all of the questions over the appropriate standard for a section 523(a)(6) claim. The circuits employ different standards in determining whether a debtor's conduct amounts to a "willful and malicious injury ... to another entity or to the property of another entity." In order for conduct to qualify as willful and malicious under Fifth Circuit precedent, the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." <u>Williams v. IBEW Local 520 (In re Williams)</u>, 337 F.3d 504, 509 (5th Cir. 2003) (quoting <u>In re Miller</u>, 156 F.3d 598, 606 (5th Cir. 1998)). In other words, substantial certainty that injury will result from the defendant's conduct is sufficient to support a section 523(a)(6) claim even if the defendant did not have a subjective motive to cause harm. Moreover, injuries covered by section 523(a)(6) are not limited to physical damage or

-13-

destruction; harm to personal or property rights is also covered by this provision. 4 Collier on Bankruptcy ¶ 523.12(4) (15th ed. rev.2003).

Here, the court has previously found that Godinez converted WCG's property for his personal use, and that he acted with fraudulent intent. Courts have held that conversion of property accompanied by fraudulent intent supports a claim for willful and malicious injury under section 523(a)(6). Accordingly, the court finds in favor of the plaintiffs on their section 523(a)(6) claim.

**C. Non-Dischargeability Under 11 U.S.C. § 523(a)(2) – Fraud**

Section 523(a)(2)(A) provides an exception to the discharge for debts arising from "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A). A creditor must prove five elements under section 523(a)(2)(A): (1) the debtor made a representation; (2) the representation was knowingly false; (3) the representation was made with the intention and purpose to deceive a creditor; (4) the creditor relied upon the representation; and (5) the creditor suffered a loss as a proximate result of the representations made by the debtor. <u>Selenberg v. Bates (In re Selenberg)</u>, 856 F.3d 393, 398 (5th Cir. 2017). The record does not support a claim under section 523(a)(2)(A). Specifically, plaintiffs have not

-14-

established a misrepresentation or an actionable omission and reliance by a preponderance of the evidence. Accordingly, the court finds in favor of Godinez on plaintiffs' section 523(a)(2)(A) claim.

## CONCLUSION

For the foregoing reasons, the court finds for the plaintiffs on their claims under 11 U.S.C. §§ 523 (a)(4) and 523(a)(6). The court fixes the amount of plaintiffs' claim that is **non-dischargeable** at **$100,142**. Plaintiffs shall submit a judgment in conformity with the court's ruling within thirty (30) days.

###